387 P.2d 90

**CONTINENTAL THRIFT & LOAN COMPANY, a Utah corporation, Plaintiff and Respondent,**

v.

**J. Clyde HUNT, Defendant and Appellant, Jesse L. McCabe, Defendant.**

No. 9837.

Supreme Court of Utah.

Dec. 2, 1963.

---

3. Standard Thesaurus of English Words and Phrases, p. 475.

4. Fleming v. Bronfin, D.C.App., 104 A.2d 407.

Cannon, Duffin & Pace, Salt Lake City, for appellant.

McBroom & Hyde, Salt Lake City, for respondent.

HENRIOD, Chief Justice.

Appeal from a judgment for attorney fees in favor of plaintiff in connection with a promissory note. Reversed and remanded with instructions.

Defendant Hunt signed a note as an accommodation for defendant McCabe, principal obligor, who was not served and who is not affected in this case. McCabe, but not Hunt, also signed a chattel mortgage on a truck to secure the note. McCabe defaulted on the note and took the truck to Phoenix, where it was abandoned, stripped, more or less, but repossessed by plaintiff. There ensued some discussions between defendant Hunt and the note payee, which culminated in the former's payment of some of the costs incurred by plaintiff in repossessing the vehicle, and in Hunt's taking possession thereof. Why Hunt made such payments appears to have been for the purpose of mitigating his obligation on the note.

Thereafter a meeting was had between the parties in which Hunt acknowledged his obligation on the note, but in which he evinced an objection to pay more than the face amount thereof, plus interest and reasonable attorney fees. Plaintiff, in the meantime, employed new counsel, who, in negotiations of short duration, demanded that Hunt sign a new, secured note,—a demand uncalled for under Hunt's signature on the simple, unsecured note he had signed. Hunt refused to accede to this requirement and although there appears to have been a gesture on the part of Hunt to pay what he had promised, plaintiff nonetheless filed suit against him, alleging that he and McCabe had "both executed a promissory note *and mortgage*" according to an attached exhibit. This allegation was completely inaccurate as reflected by the exhibit itself.

There was considerable lawyer talk indulged with the trial court, the plaintiff confusing the issue by dwelling on its expense in Arizona with respect to gaining possession of the abandoned security, including attorney fees. It is difficult to understand why such colloquy or the testimony of plaintiff's counsel anent thereto was pertinent, since Hunt's obligation extended no further than the terms of the promissory note,—not the mortgage.

Nonetheless, Hunt paid $6,000 into court on an obligation which the complaint said was only $5,038.64, the differential obviously being a tender of payment for at least part of the expense of preserving the security,—incurred by plaintiff to protect itself but which may have been of indirect benefit to but doubtfully obligatory on the part of Hunt.

At any rate, everyone was agreeable to the $6,000 deposit in court, and it was stipulated that the only question was the matter of attorney fees for prosecution of *this action* in Utah, unconnected with any proceedings in Arizona, in which local action it was claimed erroneously that Hunt had signed the mortgage.

In short, Hunt had agreed to pay any amount due under the note, plus interest, plus reasonable attorney fees for collection. Therefore, the only question was what plaintiff's attorney was entitled to as a reasonable fee for what he had done by way of preparing and filing a one-page complaint, causing summons to issue and negotiating by letter, a telephone call and a one-hour meeting with the principals. No evidence was adduced as to what was a reasonable fee for the service, save plaintiff's counsel's own opinion.

It seems, therefore, that this case must be remanded to the trial court to assess a reasonable attorney fee based on what was done with respect to *this particular lawsuit*, to the exclusion of anything that transpired in Arizona by anyone in an attempt to protect the security.

The plaintiff and the court apparently relied on a Salt Lake County suggested fee schedule, which is designed to fix fees chargeable to an attorney's client. This may be a yardstick of sorts, but it is not inflexible. Under the circumstances of this case, where there is some indication that the matter may have been resolved without litigation save for plaintiff's demand that an *unsecured* note be abandoned and transmuted into an entirely different obligation, that of a *secured* promise, the yardstick may be shorter or longer than its two extremes. Consequently it is ordered that the judgment for attorney fees be vacated, and that if the parties cannot agree on a reasonable fee *as to this case,* that competent, admissible evidence be taken to determine such fee for the services rendered as to collection of an unsecured note, irrespective of services rendered to plaintiff with respect to action

taken to repossess the truck, taking into consideration the tender into court of an amount in excess of the note's primary obligation, together with the circumstances surrounding this particular lawsuit and without respect to fees paid by plaintiff in protecting its own security, which was no concern of Hunt, who did not sign the chattel mortgage.

McDONOUGH, CALLISTER, CROCKETT, and WADE, JJ., concur.